UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| STEEL SERVICE CORPORATION | : | |
| Plaintiff, | : | NO. 1:05-CV-504 |
| | : | |
| | : | |
| v. | : | |
| | : | **OPINION AND ORDER** |
| | : | |
| CITY OF CINCINNATI, OHIO | : | |
| Defendant, | : | |
| | : | |
| | : | |

This matter is before the Court on Defendant City of Cincinnati's Motion for Summary Judgment (doc. 14), Plaintiff's Response in Opposition (doc. 17), Plaintiff's Cross-Motion for Partial Summary Judgment (doc. 18), Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment (doc. 21), Defendant's Response in Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment (doc. 22), and Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Cross-Motion (doc. 23).

For the reasons stated herein, the Court DENIES Defendant's Motion for Summary Judgment (doc. 14) and DENIES Plaintiff's Cross-Motion for Summary Judgment (doc. 22).

I.  Facts

On February 13, 2004, Plaintiff Steel Service Corporation

entered into a contract with Defendant City of Cincinnati (doc. 1).
The contract required Plaintiff to detail, fabricate, and erect a
steel superstructure for the expansion and renovation of the
Cincinnati Convention Center (Id.).  The parties to the contract
experienced three delays potentially affecting Sequence 5 of the
project, the crux of the instant motions (doc. 14).

        Sequence 5, initially scheduled to begin August 18, 2004
and for completion by August 24, 2004, required the erection of
heavy columns upon which T-4 trusses were suspended (doc. 17).
Initiation of Sequence 5 was postponed due to a delay in the
delivery of heavy columns by their site of manufacture in Europe,
and due to a halt to construction because of visits by Presidential
candidates Bush and Kerry.  Further, Defendant claims that delay in
this sequence was also due to a delay in the delivery of T-4
trusses due to problems with subcontractor.

        The size of the project called for heavy column steel
available from only two suppliers in the world—Corus Steel in
London and Arcelor International America ("Arcelor") in Luxembourg,
Belgium (doc. 17).  Plaintiff states that Corus Steel did not have
the materials available for the order, so on March 29, 2004,
Plaintiff ordered the columns from Arcelor (Id.).  On August 10,
2004, Plaintiff orally notified Defendant of shipping delays, such
that the heavy columns would not arrive on site until August 24th
(Id.).  The written correspondence indicated that such delays were

-2-

most likely due to hurricane conditions in the Gulf preventing timely arrival at Plaintiff's New Orleans plant (Id.). The columns ultimately arrived onsite and were erected on August 27, 2004 (Id.).

Sequence 5 also required delivery of the T-4 trusses prior to the scheduled initiation date of August 18, 2004. The original subcontractor, Odom Industries ("Odom"), contracted with Plaintiff to fabricate and deliver the T-4 trusses by August 18, 2004 (doc. 14.). On August 10, 2004, Plaintiff notified Defendant of its intent to terminate Odom for failure to timely perform its contract with Plaintiff (Id.). On August 16th, 2004, Plaintiff notified Defendant that it had terminated its sub-contract with Odom and hired Indiana Bridge & Iron Company to complete the trusses (Id.). Although Indiana Bridge delivered the finished trusses to the job site on September 1, 2004, they were rejected by Defendant due to fabrication errors (Id.). The trusses were re-delivered to the job site September 3, 2004, and installed Saturday, September 4, 2004 (Id.).

Finally, on August 12, 2004, Hunt Construction Group ("Hunt"), the City's construction manager, at the direction of Defendant and the Secret Service, directed Plaintiff to remove workers, hazardous materials, and equipment from the job site due to the 2004 Bush/Kerry presidential campaign rallies scheduled at the Convention Center on August 16 and August 18, 2004 (doc. 17).

-3-

Steel Service complied with the order, and lost four working days between Friday, August 13 and Thursday, August 19, 2004 due to the impracticality of remobilizing the construction crew and equipment between the visits by the candidates (Id.). Defendant does not agree that it was impracticable to remobilize between the visits (doc. 14).

In response to the delays, Hunt issued a series of letters on August 12, 2004, directing Plaintiff to prepare and submit a recovery schedule to account for the impacts of the Arcelor column and T-4 late deliveries (Id.). The correspondence apportioned all costs of recovery to Plaintiff (Id.). Plaintiff submitted a recovery schedule proposal on August 25, 2004, which Hunt rejected August 26th, 2004 (Id.). Hunt directed Plaintiff to implement Hunt's recovery schedule, at Plaintiff's cost, starting August 30, 2004 (Id.). On August 27, 2004, by letter, Plaintiff agreed to begin Hunt's recovery schedule, but reserved the "right to discuss further the momentary impacts in the future" (Id.). Plaintiff completed the recovery schedule on or about October 6, 2004 (doc. 14).

Plaintiff notified Defendant that it was in the process of formulating a claim for all recovery costs due to impacts not within their control on September 28, 2004 (doc. 17). On October 19, 2004, Plaintiff submitted its claim in the total amount of $238,204.00 (Id.).

-4-

## II. Plaintiff's Complaint

On July 27th, 2005, Plaintiff filed its complaint alleging breach of contract (doc. 1). Therein, Plaintiff claims that, in accordance with Paragraph 20.3 of the contract, the Defendant directed it to undertake "Extraordinary Measures" to avoid the impact of delays (Id.). Plaintiff contends that the delays were excusable, as they were due to acts of the City, acts of God, and events beyond the control and without the fault of Steel Service as specified in Paragraph 40.1 (Id.). As such, Plaintiff argues that Defendant is required, pursuant to Paragraph 20.3, to compensate Plaintiff for accelerating construction to overcome excusable delays (Id.).

As a proximate result of Defendant's directive to undertake the additional measures and refusal to pay for the additional costs, Plaintiff alleges damages totaling $232,455.00 (Id.). Plaintiff requests a judgment against Defendant for damages and pre- and post-judgment interest at the maximum legal rate (Id.).

## III. Defendant's Motion for Summary Judgment

On May 15, 2006, Defendant moved for summary judgment on all claims alleged by Plaintiff (doc. 14). Therein, Defendant provides three bases on which it contends summary judgment is proper (Id.). First, Defendant asserts that Plaintiff's damage claims are barred by the terms of the contract (Id.). With regard

-5-

to delays caused by the Bush/Kerry appearances, Defendant points
specifically to Paragraph 39.1, which requires Plaintiff to provide
"clear and convincing evidence that the cause of delay was within
the control of the City" (Id.). Defendant contends the federal
government required the Bush/Kerry shut down (Id.). As an act of
the federal government pursuant to Paragraph 40.1, Defendant argues
that Plaintiff is barred from damages or money adjustments (Id.).

        Defendant similarly contends that delays due to a
hurricane are also barred from damages or adjustment (Id.).
Defendant argues that to the extent that Plaintiff can prove a
hurricane actually delayed the steel shipment, Paragraph 40.1.4 of
the contract only allows for time extensions as a remedy (Id.).
Moreover, Defendant argues that the clause requires a direct
impact, such that the weather directly affected or prohibited work
under the contract (Id.). Defendant notes that Plaintiff's
allegations do not include such a connection and cites Steel
Service president Jim Simonson's testimony indicating that
Plaintiff had other activities and projects to work on during the
steel delay (Id.).

        Defendant's second basis for summary judgment is that
Plaintiff failed to provide timely notice of its claim (Id.).
Paragraph 37.3 requires that notice of claims be made within three
days of the event giving rise to the claim and made in writing
within thirty days (Id.). Again citing the testimony of Jim

-6-

Simonson, Defendant contends the event giving rise to the claim was Hunt's August 26, 2004 recovery order (<u>Id</u>.).  Though Plaintiff sent a letter the following day, Defendant argues that it was not adequate notice, as it only "reserve[d] the right to discuss further the monetary impacts in the future" and did not provide notice of a claim (<u>Id</u>.).  Defendant contends that actual notice came on September 28, 2004, thirty-three days late (<u>Id</u>.).

Even if the Court finds the August 27th letter to be sufficient notice, Defendant argues that the claim was untimely filed (<u>Id</u>.).  The claim had to be filed by September 25, 2004, thirty days after the event giving rise to the claim (<u>Id</u>.). Defendant contends that the Plaintiff waited until November 1, 2004, that this filing was over the thirty day limit and, ultimately, that the claim was properly denied by the City (<u>Id</u>.).

Defendant also argues that summary judgment is proper because Plaintiff was responsible for concurrent delays (<u>Id</u>.).  The City argues that the Sequence 5 schedule required both the delayed heavy column steel and installation of the T-4 trusses (Id.). Defendant claims that Plaintiff failed to deliver the T-4 truss material in time to support the Sequence 5 schedule, such that even if the City is found liable for the heavy column steel delay, Plaintiff cannot claim damages because it was responsible for concurrent delays which would have delayed Sequence 5 anyway (<u>Id</u>.).

-7-

**IV. Plaintiff's Response & Cross Motion for Summary Judgment**

On June 5, 2006, Plaintiff filed a response to Defendant's Motion (doc. 17) and Cross-Motion for Partial Summary Judgment (doc. 18).

Plaintiff claims that Defendant breached the contract when it directed Plaintiff to accelerate construction at its cost to overcome excusable delays (doc. 17). Pursuant to Paragraph 40.1, acts of the Federal Government, the City, and causes not reasonably foreseeable and beyond the control of and through no fault or negligence of the Contractor are excusable delays, and as such are not grounds for termination of the Contract or liquidated damages (Id.). Plaintiff contends that the Bush/Kerry visits were acts of the Federal Government and, when implemented by the City, also acts of the City (Id.). Alternatively, Plaintiff argues that the visits were not reasonably foreseeable, not due to Plaintiff's negligence or fault, and beyond its control (Id.).

Plaintiff similarly claims that the Arcelor Column delay was an excused delay under 40.1, as they argue it was due to an act of the City and through no fault or negligence of their own (Id., citing Carter Steel Fabricating Co. V. Ohio Dept. Of Trans., 721 N.E.2d 1115 (Ohio Misc. 2d 1999)). Plaintiff claims that because the City specified Arcelor as the sole source provider, the delay was due to an act of the City and was not within the control and through no fault or negligence of Plaintiff (Id.). Thus, pursuant

-8-

to 40.1, Plaintiff argues that the delay was excusable according to the terms of the contract (Id.).

As excusable delays, Plaintiff contends that Defendant breached the contract by not compensating Plaintiff for costs incurred by accelerating their work (Id.). Plaintiff argues that Paragraph 20.3 required Steel Service to accelerate costs when directed by the City, and that the City is required to compensate Plaintiff provided Plaintiff is not in default (Id.).

Plaintiff asserts that it was not required to comply with the contractual notice requirements due to the breach of the contract by Defendant, that Defendant had actual knowledge of Plaintiff's claims, and that Plaintiff did comply with the contractual notice requirements (Id.).

Ohio law excuses the non-breaching party to a contract from complying with conditions of the contract when the party for whose benefit the condition operates has already materially breached the contract (Id., citing Waste Management, Inc. v. Rice Danis Industries Corp., 257 F. Supp. 2d 1076, 1084 (S.D. Ohio 2003)). Plaintiff alleges that Defendant breached the contract by requiring Plaintiff to accelerate without compensation for excusable delays. As such, Plaintiff claims that it cannot be required to comply with contractual terms that operate in favor of Defendant (Id.).

Plaintiff asserts that notice was not required because

-9-

Defendant had actual knowledge that Plaintiff disclaimed responsibility for the delays and for the costs of overcoming the excusable delays (Id., citing Roger J. Au & Son v. Northeast Ohio Regional Sewer District, 504 N.E.2d 1209, 1216 (Ohio App. 1986)). Plaintiff claims that they repeatedly advised Defendant that they were not responsible for the delays or the associated costs incurred to overcome the excusable delays (Id.).

Alternatively, Plaintiff claims that it complied the contractual notice requirements (Id.). Plaintiff avers that it gave notice in a letter dated August 27 within three days of the August 26, 2004 directive to accelerate at Plaintiff's expense (Id.). In addition, Plaintiff states that it complied with the thirty day requirement by sending a letter on September 28, 2004 in response to the implementation of the recovery program on August, 30, 2004 (Id.).

Finally, Plaintiff alleges that the delay in the delivery of the T-4 trusses did not cause a delay, concurrent or otherwise, to the project (Id.). Installation of the T-4 trusses could not begin until the heavy columns from Arcelor were delivered and erected on August 27, 2004 (Id.). Plaintiff then installed other steel components necessary before the installation of the T-4 trusses could begin (Id.) The T-4 trusses were delivered and erected on September 3, 2006 (Id.). Plaintiff acknowledged a one day delay caused by the delay in the delivery of the T-4 trusses

-10-

and, therefore, worked an additional Saturday at its costs to make up the delay (Id.).  Therefore, Plaintiff avers the delay in the delivery of the T-4 trusses did not cause a delay in the start of Sequence 5 or Sequence 6 (Id.).

## V.  Legal Standard

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam).  In reviewing a motion for summary judgment, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record that demonstrate the

absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

        The non-moving party facing such a motion, after completion of sufficient discovery, must submit evidence to support any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The rule requires that there be no genuine issue of material fact, however, a factual dispute between the parties as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 ; see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, the existence of a mere "scintilla of evidence" supporting the non-movant's position will be insufficient; evidence must exist on which the jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24

F.3d 781, 784 (6th Cir. 1994). Accordingly, to survive summary judgment and proceed to trial on the merits, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

       The non-movant must cite the designated portions of the record with enough specificity that the court can readily identify the facts upon which the non-moving party relies. Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Mere conclusory allegations are insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, in deciding the motion the Court may not assess the credibility of witnesses or weigh evidence. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

       Ultimately, the moving party bears the burden of proving that no material facts are in dispute. See Matsushita, 475 U.S. at 587. A lack of response to the motion by the non-moving party does not lessen the burden on either the moving party or the Court to

demonstrate the appropriateness of summary judgment. <u>See</u> <u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-55 (6th Cir. 1991).

## VI.  Analysis

After reviewing Defendant's motion and Plaintiff's cross motion, the Court finds that it is inappropriate to grant summary judgment.  There remain numerous disputes that are not appropriate for the Court to resolve.

### A. Defendant's Grounds for Summary Judgment

#### 1.  Plaintiff's Claims are Barred by Contract

Defendant argues that Plaintiff's claim for damages is barred under the terms of the contract (doc. 14).  Defendant first makes this argument as to the delays caused by the Bush/Kerry events (<u>Id</u>.).  Both parties agree that the Bush/Kerry events were excusable delays under paragraph 40.1 of the contract, either as "Acts of the Federal Government" or "Acts of the City" (docs. 14, 17).  Defendant contends that under the contract, Plaintiff is only entitled to a schedule extension for this delay, not the monetary damages sought here(doc. 14).  In fact, paragraph 40.1.8 states that such delays "shall not result in any claim for damages or contract adjustment other than extension of time."

Plaintiff agrees that its remedies would be limited to a schedule extension, if not for the accelerated schedule implemented by Defendant (doc. 17).  Plaintiff maintains that Defendant

-14-

breached the contract when it directed Plaintiff to accelerate to overcome these delays at its cost (<u>Id</u>.). Defendant denies that the accelerated schedule was intended to compensate for the delays caused by these events, claiming that the schedule only pertained to the Arcelor and T-4 truss delays. In fact, Defendant contends that far from being asked to accelerate for those delays, Plaintiff was provided a two day accommodation for the Bush/Kerry events. As evidence, Defendant avers that the two letters regarding the recovery schedule do not mention the Bush/Kerry delays (doc. 21). Indeed, the letter directing Plaintiff to initiate a recovery schedule states that it is "to include the impacts of both the late delivery of the Belgium milled columns and the late T4 truss deliveries" (doc. 14). However, as Plaintiff points out, the August 26, 2004 letter specifically states that the six day recovery schedule "accommodates the two days down time that were required due to the added [Bush/Kerry] events" (doc. 23). Plaintiff avers that this statement, as well as the minutes from an August 18, 2004 meeting showing that there was discussion of the Bush/Kerry delays, prove these events were included in the recovery schedule (<u>Id</u>.). Further, the parties disagree about whether the two day accommodation Defendant claims it provided Plaintiff for these events sufficiently covered the days Plaintiff shut down construction.

Based on the evidence presented, a reasonable jury could

-15-

find that Plaintiff was required to accelerate to make up for the Bush/Kerry delays. A jury could conclude that the language of the August 26, 2004 letter evidences the parties intent to include the Bush/Kerry delays in the acceleration plan. Further, a jury might conclude that based on the logistics of demobilization and remobilization of the equipment, the two day accommodation was not sufficient and Plaintiff was required to accelerate at its own cost for an excusable delay. Therefore, because a reasonable jury could find for the non-movant, Defendant is not entitled to summary judgment on this issue.

Likewise, the Court finds summary judgment is not proper based on Defendant's argument that the contract bars damage claims for the delays caused by the late delivery of the Arcelor columns. Under Carter, for the Court to find the Arcelor delays excusable, Plaintiff must prove two things: (1) that Arcelor was a sole supplier of the heavy columns, and (2) that the delays were not within Plaintiff's control. 721 N.E. 2d at 1117. In Carter, the court determined the manufacturer was a sole supplier because the contractor could not terminate its contract "and hire another supplier to complete the job sooner, since there was no other supplier to hire." Id. Defendant argues that Arcelor was not a sole source supplier, pointing to the affidavit of Jim Simonson, who admitted the steel was also manufactured by Corus f/k/a British Steel (doc. 21). Defendant argues that because there was more than

-16-

one source of steel, <u>Carter</u> does not apply, and the delay in the Arcelor steel delivery was Plaintiff's responsibility (<u>Id</u>.).

However, in reviewing the evidence presented by the parties, the Court finds that Arcelor does qualify as a sole source supplier. The affidavits of Jim Simonson and John M. Oxley both note that while Corus f/k/a British Steel did manufacture the steel needed for the construction, it was not available to do so at the time the steel was ordered. Despite arguing the contrary, Defendant offers no evidence to suggest this was not the case. The Court concludes that under these facts, Arcelor was the sole supplier of the heavy steel columns specified under the contract.

However, the Court finds that there remains a genuine issue of material fact as to whether Plaintiff had control over the delays. The question of fault depends on whether the delays were due to poor management on the part of Plaintiff, or if the delays were out of Plaintiff's control. Defendant contends that the former is true, pointing out that Plaintiff did not become concerned until the columns, scheduled for June delivery, had not arrived in early August (doc. 21). Plaintiff has presented the affidavits of John Oxley and Jim Simonson stating that although the columns were ordered well in advance, Plaintiff did not have the ability to expedite the shipment of the columns (doc. 23). However, the Court finds that neither party has presented more than speculative evidence about the actual reason for the delays in the

-17-

delivery of the columns.[1] In sum, it is possible a jury could conclude that the delays in the Arcelor columns were beyond Plaintiff's control, and thus excusable delays. Therefore, Defendant is not entitled to summary judgment on the basis of this argument.

Nonetheless, Defendant avers that even if Plaintiff is entitled to relief for the delays caused by the late delivery of the Arcelor columns, Plaintiff's sole basis for relief under the contract is a schedule extension (doc. 14). As previously discussed, Plaintiff maintains that because of the acceleration schedule, its remedies are not limited to an extension (doc. 17). In support, Plaintiff points to Paragraph 20.3 of the contract, which states, in part:

> The City or Construction Manager, if the city deems necessary, may direct the Contractor to work additional shifts or overtime, supply additional manpower, equipment and facilities, and take other similar measures ("Extraordinary Measures") and, if so directed, the Contractor shall undertake said Extraordinary Measures and, provided that the Contractor is not in default under any of the terms or provisions of the contract or of any of the other Contract Documents, the City will pay the Contractor for such actual additional wages paid, if any, at rates which have been approved in writing by the City and the Construction Manager(Id.).

---

[1] For example, neither Mr. Oxley nor Mr. Simonson's affidavits state the reason for the delay, but only speculate on what may have happened. Likewise, Defendant does not present evidence that Plaintiff's earlier awareness of the problems could have affected the delivery date.

This provision, avers Plaintiff, obligated Steel Service to accelerate when directed by Defendant, and also obligated Defendant to pay Plaintiff for the cost of acceleration (Id.). Plaintiff states that when Defendant failed to compensate Plaintiff, Defendant breached the contract, entitling Plaintiff to recover the cost of acceleration (Id.).

The question of whether Defendant breached the contract is significant because "under Ohio law, a non-breaching party to a contract is excused from complying with conditions of the contract, when the party for whose benefit the condition operates has already materially breached the contract." Waste Management, Inc. v. Rice Danis Industries Corp., 257 F.Supp. 2d 1076, 1085 (S.D. Ohio 2003). However, this is a determination that hinges on the allocation of fault for the Arcelor delays. Because the Court has already determined that is an issue for a jury, summary judgment is not proper on the basis of this argument.

### 2. Timely Notice

The next unresolved issue is whether Defendant received the contractually required notice of Plaintiff's claim. Defendant cites Paragraph 37.3 of the Contract which provides:

> Notice of claims by either party must be made within three (3) days after occurrence of the event giving rise to such claim. Claims must be made by written notice within thirty (30) days after occurrence of the event giving rise to such claim. An additional claim made after the initial claim has been implemented by change order will not be considered unless

-19-

submitted in a timely manner (doc. 14).

Defendant claims that Plaintiff did not comply with this provision and so should be barred from seeking recovery (Id.). In defense, Plaintiff again makes the argument that Defendant breached the contract, thus freeing Plaintiff from compliance with contractual provisions (Id.). As noted above, resolution of this question necessarily includes a determination of issues that are not appropriate for summary judgment. Therefore, because a jury might find that it was unnecessary for Plaintiff to give notice if Defendant breached the contract, the Court must reject summary judgment for Defendant on this ground.

### 3. Concurrent Delays

Defendant's last argument for summary judgment is that Plaintiff is not entitled to any relief because it is responsible for a concurrent delay (doc. 14). Defendant relies on Paragraph 39.2 of the contract, which states:

> No extension of time shall be granted to the Contractor to the extent that notwithstanding the existence of any such circumstance beyond the Contractor's control, delay would have resulted in any event due to a concurrent unexcused delay by the Contractor (Id.).

Defendant contends that the late delivery of the T-4 trusses delayed the Sequence 5 schedule, a delay which qualified as "concurrent" under this provision (Id.). After the initial rejection the truss material was redelivered to the job site on September 3, 2004, which Defendant argues delayed subsequent

-20-

sequence schedules (Id.). Defendant avers that even if all other delays were excusable, the existence of this concurrent delay precludes recovery (Id.).

To the contrary, Plaintiff argues that the T-4 trusses did not cause any delay, much less a concurrent delay (doc. 17). Plaintiff states that the Affidavit of James A. Simonson establishes:

> (1) the Arcelor columns were delivered and erected on August 27, 2004; (2) Steel Service implemented the recovery plan beginning August 30, 2004; (3) the T-4 trusses were re-delivered to the Project after repairs on September 3, 2004; and (4) prior to September 3, 2004, Steel Service erected other steel which could not be erected before erection of the Arcelor columns and which had been available for erection since approximately mid-August 2004 and not called for delivery to the Project until September 1, 2004 (doc. 23).

In sum, Plaintiff argues that the T-4 trusses were not needed until September 4, 2004, and thus, did not delay the project (Id.). In response, Defendant offers correspondence between the parties about the acceleration schedule as proof that the T-4 trusses delayed the project, stating "[h]ad Steel Service believed that the T-4 trusses had not delayed the project, then there would have been some evidence, through a writing or e-mail, of a disagreement with the August 12, 2004 letter" (doc. 21).

The Court finds this argument wholly without merit. Plaintiff's belief about whether the T-4 trusses delayed the project is immaterial to the question of whether the late delivery

-21-

of the T-4 trusses actually constituted a concurrent delay. Defendant is correct in that Plaintiff does not dispute its responsibility for the T-4 truss deficiencies and delays (doc. 21). However, this admission does not equate to a finding that the T-4 trusses would have delayed the project regardless of the Arcelor column and Bush/Kerry delays. Plaintiff offers evidence that it was able to supplement other work while the T-4 trusses were being redelivered and that the T-4 trusses were installed on the day they were needed, at the Plaintiff's expense. Defendant offers nothing to dispute this version of events stated in the affidavit of Jim Simonson. Therefore, the Court finds that because a reasonable jury might conclude that the T-4 trusses did not delay the project, Defendant is not entitled to summary judgment on the basis of this argument.

### B. Plaintiff's factual disputes

Plaintiff's motion for partial summary judgment is based on the theory that the delays included in the acceleration schedule were excusable, and therefore, Defendant breached the parties' contract when it refused to pay Plaintiff to accelerate to overcome the delays (doc. 23). To establish a breach of contract under Ohio law, a plaintiff must show that a contract existed, the plaintiff performed, the defendant breached, and the plaintiff suffered damages. Pavlovich v. National City Bank, 435 F.3d 560(6th Cir. 2006). As previously discussed, a finding that Defendant breached

by not compensating Plaintiff for the acceleration costs necessarily depends on the allocation of fault for the Arcelor delays, as well as a determination of whether Plaintiff was made to accelerate for the Bush/Kerry delays.

The Court finds that Plaintiff is not entitled to partial summary judgment because a reasonable jury could find for the non-moving party and determine that Defendant did not breach the contract. First, a reasonable jury might find that Plaintiff was not made to accelerate for the Bush/Kerry visits at its own expense. There is a factual dispute as to whether the Defendant appropriately credited Plaintiff for the work time lost as a result of the Bush/Kerry visits. While Plaintiff states that the visits required it to shut down operations for at least three days (doc. 17), Defendant argues that the two day accommodation was sufficient (doc. 14). However, neither party offers more than their plain statement to refute the other's position.

Second, whether the Arcelor delays were excusable remains an unresolved issue. As the Court concluded above, although Arcelor was a sole supplier under the circumstances of this case, a question remains about whether the delays were within Plaintiff's control. Therefore, a grant of partial summary judgment for the Plaintiff is not appropriate.

## VII. Conclusion

For the foregoing reasons, the Court DENIES

-23-

Defendant's Motion for Summary Judgment (doc. 14) and DENIES Plaintiff's Cross Motion for Summary Judgment (doc. 18).

        SO ORDERED.


Dated: March 13, 2007      /s/ S. Arthur Spiegel
                         S. Arthur Spiegel
                         United States Senior District Judge